UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE
2022 AUG 26  PM 3: 36

MYNOR FEDERICO NUNEZ BALTAZAR,       )
                                     )
PLAINTIFF,                           )        Civ. _____ ( __ )
                                     )
                                     )
v.                                   )        VERIFIED COMPLAINT
                                     )
GOLDFARB PROPERTIES INC., PELICAN    )        JURY TRIAL DEMANDED
MANAGEMENT INC., ROCKAWAY ONE COMPANY )
LLC, CHRISTOPHER MILLER, LINDSAY HEINEMAN )
(HECK), MICHAEL KOENIG, HAL WEINER, SOPHIA )
BIRAGLIA, BETTINA EQUITIES COMPANY LLC, )
BETTINA EQUITIES MANAGEMENT LLC,     )
                                     )
DEFENDANTS.                          )
                                     )

## COMPLAINT

Plaintiff, MYNOR FEDERICO NUNEZ BALTAZAR, Pro Se, hereby asserts upon facts.

1. All Defendants are located and transact business within the Southern District of New York, and are engaging in a pattern of retaliation and violating the Constitutional and statutory rights of Plaintiff. Defendants have deliberately disregarded known or serious risks of harm to Plaintiff, and their actions and failures to act cause harm or serious risks of harm to Plaintiff, **including unnecessary isolation and segregation**, physical, medical, and psychological harm. After Defendants refused to engage in constructive and cooperative dialogue, Plaintiff has concluded that a Complaint is necessary to ensure that the unconstitutional and unlawful conditions are remedied. This case is brought under The Americans with Disabilities Act of 1990 (ADA), The Fair Housing Act of 1978, as well as applicable Local, State, and Common law.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, 28 U.S.C. § 2201, and 42 U.S.C. § 3613. This Court has supplemental jurisdiction over the New York City law, New York State law, and Common law claims pursuant to 28 U.S.C. § 1367.

3.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants are incorporated and conduct business in this District while Plaintiff was aggrieved in this District. In addition, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all parts of the events giving rise to the claims occurred in this District.

## PARTIES

4.  Plaintiff Mynor Federico Nunez Baltazar is an individual residing at 20-50 Seagirt Blvd Apt#3E, Far Rockaway, NY 11691.

5.  Defendant Goldfarb Properties Inc. (Landlord), is a corporation transacting business in the counties of New York, Bronx, and Westchester, with a corporate address of 524 North Avenue, New Rochelle, NY 10801.

6.  Defendant Pelican Management Inc. (Landlord), is a corporation transacting business in the counties of New York, Bronx, and Westchester, with a corporate address of 524 North Avenue, New Rochelle, NY 10801.

7.  Defendant Rockaway One Company LLC (Landlord), is a limited liability company transacting business in Far Rockaway, NY 11691, with a corporate address of 524 North Avenue, New Rochelle, NY 10801.

8.  Defendant Christopher Miller in his Official Capacity as Employee of one or more of the corporations and or limited liability companies listed as a Defendant herein; he transacts business in Bronx, NY, and Far Rockaway, NY, with a corporate address of 524 North Avenue, New Rochelle, NY 10801.

9.  Defendant Lindsay Heineman (Heck) in her Official Capacity as Employee of one or more of the corporations and or limited liability companies listed as a Defendant herein; she transacts business in Bronx, NY, and Far Rockaway, NY, with a corporate address of 524 North Avenue, New Rochelle, NY 10801.

10. Defendant Michael Koenig in his Official Capacity as Attorney and Employee of one or more of the corporations and or limited liability company listed as a Defendant herein; he transacts business in Bronx, NY, New York, NY and Far Rockaway, NY, with a corporate address of 524 North Avenue, New Rochelle, NY 10801.

11. Defendant Hal Weiner in his Official Capacity as Attorney and Employee of one or more of the corporations and or limited liability company listed as a Defendant herein; he transacts business in Bronx, NY, New York, NY and Far Rockaway, NY, with a corporate address of 524 North Avenue, New Rochelle, NY 10801.

12. Defendant Sophia Biraglia in her Official Capacity as Employee of one or more of the corporations and or limited liability company listed as a Defendant herein; she transacts business in New York, NY, with a corporate address of 230 East 85th Street, New York, NY, 10028.

13. Defendant Bettina Equities Company LLC (Landlord), is a limited liability company transacting business in New York City, with a corporate address of 230 East 85th Street, New York, NY, 10028.

14. Defendant Bettina Equities Management LLC (Landlord), is a limited liability company transacting business in New York City, with a corporate address of 230 East 85th Street, New York, NY, 10028.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL PARTIES

15. Plaintiff's NYC Commission On Human Rights' administrative complaint against Defendants, titled Baltazar's Unsworn Declaration Under Penalty Of Perjury Pursuant To 28 U.S. Code § 1746, dated 8/13/2021, hereby labeled as "EXHIBIT 1", is attached hereto, shall be incorporated herein, and shall be understood to be a part hereof as though included in the body of this Complaint.

16. Plaintiff receives Social Security Disability Insurance and is a *qualified individual with disabilities* for purposes of The Americans with Disabilities Act of 1990 (ADA), The Fair Housing Act of 1978, as well as applicable Local and State law.

17. In the Americans with Disabilities Act of 1990 (ADA), Congress described the **isolation and segregation** of individuals with disabilities as a serious and pervasive form of discrimination. 42 U.S.C. § 12101(a)(2), (5), 42 U.S.C. § 12132; *Olmsted v. L.C.,* 527 U.S. 581, 597 (1999), and requires States and other public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

18. Landlords, as owners of "public accommodations," have an independent duty to comply with the ADA.

19. Landlords under Section 8 HAP Contract have an independent duty to comply with HUD PHA Fair Housing Act/ADA Reasonable Accomodation **APPROVALS**.

20. On or about April 21, 2021, Plaintiff's prescribing and non-prescribing medical providers, alongside Plaintiff's U.S. Department of Housing and Urban Development (HUD) Public Housing Authority (PHA), who administers Plaintiff's Section 8 Housing Choice Voucher; BOTH required to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities" 28 C.F.R. § 35.130(d); made and **APPROVED** a Fair Housing Act Medical Accommodation (ADA)Request to Landlord and issued a Move Voucher to Plaintiff. Requesting that Plaintiff be moved to Manhattan or the Bronx, on an emergency basis as to alleviate **serious conditions of isolation and segregation** which are exacerbating Plaintiff's medical condition.

21. Plaintiff and the NYC Commission On Human Rights had warned the Defendants that their refusal to accommodate Plaintiff's disability as approved by the HUD PHA, and or, refusal to

rent to Plaintiff, and or, retaliatory racial discrimination, and or, retaliatory eviction attempt,
violated the law.

22. Many months later, due to Landlords refusing to move Plaintiff to Manhattan or the Bronx,
Plaintiff's Section 8 Move Voucher expired.

23. Plaintiff was forced to make another Fair Housing and ADA Medical Accommodation Request
to his HUD PHA with the same facts as before. However, this time with the addition of a
Live-in Aide; **due to isolation causing a significant breakdown in Plaintiff's mental health.
Which included suicidal ideation and attempted suicide on or about November, 2021.
When a neighbor called Firefighters and Wavecrest Gardens Security to put out a fire in
Plaintiff's apartment; saving Plaintiff from suicidal death.**

24. On August 19, 2022, at 11:09am. Plaintiff's HUD PHA called him from a 917-286-4300
number to inform him that his *second* Fair Housing Act and ADA Medical Accommodation
Request, pertaining to this *same* matter, has been **APPROVED** and a new Section 8 Move
Voucher will be issued soon.

### FIRST CAUSE OF ACTION
The American with Disabilities Act of 1990 (ADA)
Discrimination, Failure to Accommodate Disability, and Retaliation
(42 U.S.C. § 12101 et seq.)

25. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 to 24,
above.

26. Defendant discriminates against "qualified individual[s] with a disability" within the meaning
of the ADA by administering programs and services in a manner that denies those individuals
the opportunity to receive services in the most integrated setting appropriate to their needs.

27. The acts and omissions alleged in paragraphs 15-24 constitute discrimination in violation of
title II, and title III of the American with Disabilities Act and implementing regulations.

28. Unless restrained by the Court, Defendants will continue to engage in the acts and omissions set forth in paragraphs 15-24 that deprive Plaintiff of rights, privileges, or immunities secured or protected by federal law, and will cause irreparable harm to Plaintiff.

29. By discriminating and retaliating against Plaintiff, Defendants are in violation of the ADA and its anti-discrimination and anti-retaliation provisions.

30. Defendants' conduct was intentional, willful, and made in disregard for the rights of others and amount to recklessness or willful or wanton negligence.

31. Accordingly, under the ADA plaintiff is entitled to injunctive relief, and reasonable attorneys fees and cost.

32. Plaintiff is an aggrieved person as defined in the ADA. Plaintiff has been injured by defendants discriminatory and retaliatory conduct and has suffered damages as a result.

33. Based on all the foregoing, Defendants improperly and unlawfully have deprived, and threaten to further deprive, the Plaintiff of his right to be free from disability discrimination and retaliation.

**SECOND CAUSE OF ACTION**
The Fair Housing Act of 1978
Discrimination, Failure to Accommodate Disability, and Retaliation
(Fair Housing Act 42 U.S.C. § 3601 et seq.)

34. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 to 33, above.

35. The Defendants expressed animus by their refusal to accommodate Plaintiff's disability as approved by the HUD PHA, and or, refusal to rent to Plaintiff, and or, retaliatory racial discrimination, and or, retaliatory eviction attempt.

36. Defendants have a history of discrimination and retaliation against Plaintiff.

37. Defendants own and lease dwellings, as defined by Section 802(6) of the Fair Housing Act, 2 U.S.C. § 3602 (6), to include "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families."

38. By failing to accommodate Plaintiff's disability as approved by the HUD PHA, and or, refusal to rent to Plaintiff, and or, retaliatory racial discrimination, and or, retaliatory eviction attempt. Defendants are in violation of the Fair Housing Act and its anti-discrimination and anti-retaliation provision.

39. Defendants' conduct was intentional, willful, and made in disregard for the rights of others and amount to recklessness or willful or wanton negligence.

40. Accordingly, under the Fair Housing Act plaintiff is entitled to compensatory damages, including out-of-pocket expenses and emotional distress damages, punitive damages, injunctive relief, and reasonable attorneys fees and cost.

41. Plaintiff is an aggrieved person as defined in the Fair Housing Act. Plaintiff has been injured by defendants discriminatory conduct and has suffered damages as a result.

42. Based on all the foregoing, Defendants improperly and unlawfully have deprived, and threaten to further deprive, the Plaintiff of his right to be free from disability based housing discrimination and retaliation.

**THIRD CAUSE OF ACTION**
The New York City Human Rights Law
Disability Discrimination, Lawful Source of Income Discrimination, Failure to Accommodate Disability, and Retaliation
(New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 – 8-131)

43. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 to 42, above.

44. The Defendants expressed animus by their refusal to accommodate Plaintiff's disability as approved by the HUD PHA, and or, refusal to rent to Plaintiff, and or, refusal to accept lawful source of income, and or, retaliatory racial discrimination, and or, retaliatory eviction attempt.

45. Defendants have a history of disability discrimination against Plaintiff.

46. Defendants own and lease dwellings, as defined by Section 8-102(10), of the New York City Administrative Code to include "any building ... which is used or occupied ... as the home, residence or sleeping place of one or more human beings."

47. By failing to accommodate Plaintiff's disability as approved by the HUD PHA, and or, refusal to rent to Plaintiff, and or, retaliatory racial discrimination, and or, retaliatory eviction attempt against Plaintiff, Defendants are in violation of the New York City Human Rights Law and its anti-discrimination and anti-retaliation provision.

48. Defendants' conduct was intentional, willful, and made in disregard for the rights of others and amount to recklessness or willful or wanton negligence.

49. Accordingly, under the New York City Human Rights Law plaintiff is entitled to compensatory damages, including out-of-pocket expenses and emotional distress damages, punitive damages, injunctive relief, and reasonable attorneys fees and cost.

50. Plaintiff is an aggrieved person as defined in the New York City Human Rights Law. Plaintiff has been injured by Defendants discriminatory conduct and has suffered damages as a result.

51. Based on all the foregoing, Defendants improperly and unlawfully have deprived, and threaten to further deprive, the Plaintiff of his right to be free from housing, source of income, and disability discrimination and retaliation.

### FOURTH CAUSE OF ACTION
New York State Human Rights Law
Disability Discrimination, Lawful Source of Income Discrimination, Failure to Accommodate Disability, and Retaliation
( New York Executive Law § 296 et seq.)

52. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 to 53, above.

53. The Defendants expressed animus by their refusal to accommodate Plaintiff's disability as approved by the HUD PHA, and or, refusal to rent to Plaintiff, and or, refusal to accept lawful source of income, and or, retaliatory racial discrimination, and or, retaliatory eviction attempt.

54. Defendants have a history of disability discrimination against Plaintiff.

55. Defendants own and lease dwellings, as defined by Article 15 of the New York Executive Law § 292(10) to include "any building ... which is used or occupied ... as the home, residence or sleeping place of one or more human beings."

56. By failing to accommodate Plaintiff's disability as approved by the HUD PHA, and or, refusal to rent to Plaintiff, and or, refusal to accept lawful source of income, and or, retaliatory racial discrimination, and or, retaliatory eviction attempt against Plaintiff, Defendants are in violation of the New York State Human Rights Law and its anti-discrimination and anti-retaliation provision.

57. Defendants' conduct was intentional, willful, and made in disregard for the rights of others and amount to recklessness or willful or wanton negligence.

58. Accordingly, under the New York State Human Rights Law plaintiff is entitled to compensatory damages, including out-of-pocket expenses and emotional distress damages, punitive damages, injunctive relief, and reasonable attorneys fees and cost.

59. Plaintiff is an aggrieved person as defined in the New York State Human Rights Law. Plaintiff has been injured by Defendants discriminatory conduct and has suffered damages as a result.

60. Based on all the foregoing, Defendants improperly and unlawfully have deprived, and threaten to further deprive, the Plaintiff of his right to be free from housing, source of income, and disability discrimination and retaliation.

**FIFTH CAUSE OF ACTION**
New York State Real Property Law
Retaliation and Warranty of Habitability Violation
N.Y. Real Prop. Law § 223-b (2), § 235-b

61. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 to 60, above.

62. Plaintiff has been injured by Defendants discriminatory conduct and refusal to provide habitable housing for his disability needs and has suffered damages as a result of the retaliatory actions towards this person.

63. Defendants are Landlords, or potential Landlords to Plaintiff.

64. Based on all the foregoing, Defendants improperly and unlawfully retaliated, and threatened to further retaliate against the Plaintiff and deprive him of his right to be free from housing discrimination and retaliation on the basis of disability status and source of income.

65. Defendants are liable for damages they caused the Plaintiff.

### SIXTH CAUSE OF ACTION
Negligent and Intentional Infliction of Emotional Distress
(Common law Tort)

66. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 to 65, above.

67. Defendants' conduct was intentional, willful, and made in disregard for the rights of others and amount to recklessness or willful or wanton negligence. Also, Defendants' actions constituted gross negligence and harmed a Plaintiff.

68. "In its most recent discussion of negligent infliction of emotional distress, the Court of appeals stated: "[a] breach of the duty of care resulting directly in emotional harm is compensable even though no physical injury occurred when the mental injury is a direct, rather than a consequential, result of the breach and when the claim possesses some guarantee of genuineness" (Ornstein v. New York City Health & Hosps. Corp., 10 NY3d 1, 6, 881 NE2d 1187, 852 NYS2d 1 [2008] [internal quotation marks and citations omitted]; see Baumann v Hanover Community Bank, 100 AD3d at 816)." *Taggart v Costabile,* 131 A.D.,3d 243, 252-253 (2d Dep't 2015).

69. "As a general rule, a plaintiff who has not suffered any physical injury may recover damages for mental or emotional distress if he can establish that defendant owed a duty to him and that a

breach of that duty directly resulted in mental or emotional harm (see Rainnie v Community Mem. Hosp., 87 A.D.2d 707, 448 N.Y.S.2d 897 [1982]). *Clark v Elam Sand & Gravel, Inc.*, 4 Misc 3d 294, 296 (Sup Ct., Ontario County 2004).

70. Defendants had duties to provide healthy and habitable premises, **to not isolate Plaintiff**, to accommodate disabilities, and to not harass Plaintiff.

71. As hearin before stated, Plaintiff was subjected to refusal to accommodate Plaintiff's disability as approved by the HUD PHA, and or, refusal to rent to Plaintiff, and or, refusal to accept lawful source of income, and or, retaliatory racial discrimination, and or, retaliatory eviction attempt.

72. The unwanted, unlawful, and offensive conduct caused much apprehension, fear, depression, and anxiety attacks to plaintiff and resulted in severe emotional distress and upsetment to plaintiff.

73. The conduct of the Defendants was extreme and outrageous and **negligently**, carelessly or recklessly caused severe emotional distress to Plaintiff.

74. The damages caused to plaintiff were a direct and sudden result of Defendants' conduct.

75. Said unwanted and offensive conduct continued despite Plaintiff's demands that Defendants stop.

76. The foregoing actions by Defendants have caused and continue to cause Plaintiff grave emotional and psychological damage and destroyed the quiet peace he had enjoyed with his family and friends.

77. Said conduct by the Defendants constituted the negligent infliction of emotional distress.

78. As a direct result of the foregoing conduct of Defendants, Plaintiff has been damaged in his person, emotionally and mentally.

79. Plaintiff's claim is genuine as the **isolation** and attempts to evict Plaintiff are severe conditions that affect mindset and mental health, and Plaintiff's damages are documented by the New York City Fire Department.

## SEVENTH CAUSE OF ACTION
### Negligence
### (Common law Tort)

80. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 to 79, above.

81. Defendants neglected to accept HUD PHA's APPROVAL of the Fair Housing Act/ADA emergency move medical accommodation request. Thus keeping Plaintiff in **isolation** from family and friends who live several boroughs away, and in Fountain Hill, Pennsylvania.

82. Defendants' conduct was intentional, willful, and made in disregard for the rights of others and amount to recklessness or willful or wanton negligence.

83. As a direct result of the carelessness, recklessness and negligence of the Defendants, the Plaintiff was caused to sustain various damages including: isolation, suicide attempt, litigation in Court, inconvenience, special damages for receiving medical treatment or having to defend in Court; stress, emotional distress, shock to the nervous system; humiliation; embarrassment; pain; and suffering.

84. The injuries and damages of Plaintiff, are or may be permanent.

## EIGHTH CAUSE OF ACTION
### Equitable Remedies

85. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 to 84, above.

86. Plaintiff does not or may not have an adequate legal remedy for the wrongful, illegal acts of Defendant set forth above.

87. Plaintiff is suffering, will suffer and/or may suffer irreparable harm or injury in the present and future, as long as Defendants are acting and continuing to act wrongfully and illegally.

88. Plaintiff needs equitable relief to remedy the wrongful and illegal acts of Defendants, and is or may be entitled to any or all of the following remedies: a preliminary injunction or temporary restraining order; a permanent injunction or temporary restraining order; declaratory relief.

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

## PRAYER FOR RELIEF

1. WHEREFORE, the Plaintiff prays the Court to grant a declaratory judgment in his favor, and against Defendants, providing that Defendants' conduct denies Plaintiff the right to be free from housing discrimination and retaliation on the basis of disability status;  grant temporary and permanent injunctive relief enjoining Defendants from further denying Plaintiff the right to be free from housing discrimination and retaliation on the basis of disability status to said Plaintiff and all other similarly situated persons situated persons; award to said Plaintiff from Defendants, jointly and severally, such compensatory damages in the amount of $500,000.00 as may be proven at trial; award punitive damages to said Plaintiff from each of the Defendants to the extent allowable by law; award to said Plaintiff from Defendants, jointly and severally, the cause of this action, and pre and post-judgment interest; and grant such other relief as the Court may deem just and proper.

2. Permanently enjoin Defendants, its officers, agents, employees, subordinates, successors in office, and all those acting in concert or participation with it from continuing the acts and omissions set forth in Paragraphs 15 through 79 above, and require Defendants to take such actions as will ensure that care afforded to Plaintiff complies with federal law, including that adequate treatment is provided in the most integrated setting appropriate to his individual needs; and

3. Declare that the acts, omissions, and practices set forth in paragraphs 15 through 88 above constitute a pattern or practice of resistance to the Plaintiff's full enjoyment of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, and that those acts, omissions, and practices violate the Constitution and laws of the United States.

Respectfully submitted,                                     Dated: August 26, 2022

Mynor Federico Nunez Baltazar

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted,

Dated: August 26, 2022

Mynor Federico Nunez Baltazar

**VERIFICATION**

STATE OF NEW YORK          )

                                                ) SS.:

COUNTY OF NEW YORK     )

Mynor Federico Nunez Baltazar, being duly sworn, deposes and says that I am the Plaintiff in the within action, that I have read the Verified Complaint herein and know the contents thereof, that I know them to be true of my own knowledge, except those matters states upon information and belief, which matters I believe to be true.

Respectfully submitted,                                       Dated: August 26, 2022

Mynor Federico Nunez Baltazar

Sworn to me before this

26 day of August , 2022

NOTARY PUBLIC

RAYSEL ROJAS
Notary Public - State of New York
NO. 01RO6409228
Qualified in Queens County
My Commission Expires Sep 28, 2024

**EXHIBIT 1**

**(Baltazar's [Plaintiff's] Unsworn Declaration Under Penalty Of Perjury Pursuant To 28 U.S. Code § 1746,)**

## Baltazar's Unsworn Declaration Under Penalty Of Perjury Pursuant To 28 U.S. Code § 1746

0. I declare under penalty of perjury that the following is true and correct.

MAT-94713-K4J7V4: Complaint against Goldfarb Properties, Inc., its management company Pelican Management, Inc., its property Rockaway One Company, LLC, and their following ~~employees: Christopher Miller, Lindsay Heck (Heineman), Michael Koenig, & Hal Weiner~~

1. On or about March 9th, 2021 David Kraus MS, LMHC and I provided Goldfarb Properties, Inc. Et al. with a **Medical Accommodation request**: **See Attached** *David Kraus MS, LMHC.pdf*

2. On or about April 27th, 2021 Jodyann Wynter, LMSW and I provided Goldfarb Properties, Inc. Et al. and  NYC HPD who provides my Section 8 Voucher with a **Medical Accommodation request** using NYC HPD's standard form: **See Attached** *Reasonable Accommodation Form Mynor Nunez.pdf*

3. NYC HPD Agreed with my medical professionals, I need to be moved to another building; thus NYC HPD provided my person with an **Emergency Move Voucher which Goldfarb Properties, Inc. Et al. refuses to apply into my emergency medical accomodation move request, it** expires on 10/07/2021:**See Attached** *Mynor Federico Nunez Baltazar- executed Voucher.pdf*

4. On or about May 3, 2021 Landlord sent me a **Medical Accommodation Request Denial Letter** and **refused to speak via HIPPA to my Medical Providers: See Attached** *LANDLORD Denial Letter.pdf*

5. **In Retaliation** for making Complaints to NYC Commission On Human Rights' LEB email address, Goldfarb Properties, Inc. Et al. prevented me (and competed) from forming a Tenant Association as is my legal right, prevented me from paying my rent online, and coerced me into signing a renewal lease by threatening to terminate my lease and remove me from my apartment on August 4th, 2021 (I wrote on said Renewal Lease that I signed it under duress): **See Attached** *WaveCrestTA0001.pdf, Tenant Association Busting.pdf, Can't Pay Online-Adverse Effect.PDF, 4-Page Renewal Lease.pdf, 15-Page*

*Renewal Lease.pdf, Retaliatory Termination-Eviction.pdf, July Rent.pdf, Gmail - Complaint Against*
*GOLDFARB PROPERTIES, INC, et. al_.pdf*

6. On or about the Summer of 2018 and the Spring of 2020 **Christopher Miller illegally steered** me into

Far Rockaway. On the first occasion he agreed and told me that the Rockaway One Company, LLC

property had **"On Site Security just like [Lindenguild Hall Supportive Housing]"** which has 24/7

reception and security and thus met my medical needs for the building to be secured by a human being

24/7 as was the Supportive Housing environment I was accustomed to. This was a lie. I suffer from

Schizoaffective Disorder Paranoid and Bipolar Type. **My doctors recommend such living conditions as**

**present in 1700 and 1770 Grand Concourse for my person (See Attached** *David Kraus MS,*

*LMHC.pdf*). I was angry that I was lied to, so I immediately moved out when my Lease ended in January

2020. After signing the lease I learned that the Rockaway One Company, LLC property does not have

24/7 security/reception like Lindenguild Hall, 1700, and 1770. Lindsay Heck did not show me the

entrance to any of the buildings so I assumed that each building had a posted guard inside 24/7. Instead,

from her office, which has a separate manicured entrance, we went through a series of hallways and

basements and emerged into a "model unit." I demanded to instead see the unit that I was renting (Apt#

3B). Lindsay Heck refused to show me the apartment and said that they only show the model unit. I

reluctantly signed the lease and was shocked on my Move-In day to discover an empty building with no

24/7 security. Instead, the Rockaway One Company, LLC property employs a <u>few</u> roving security guards

that patrol the complex of over 30 buildings, while primarily looking for and seeking to ticket illegally

parked cars in the for-profit parking lot, presumably operated by Goldfarb Properties, Inc.. The Security

Guards are mainly there to generate profit; they briefly patrol through each building at various times, but

that is far from 24/7 security/reception.  I sought housing and was discriminated against by **Bettina**

**Equities LLC**, then the COVID Pandemic hit and many circumstances forced me to once again go back

to Goldfarb Properties, Inc. Et al. for an apartment. Again, I went to Christopher Miller for an apartment

in the Bronx, specifically at 1700 or 1770 and **he rented the apartment to someone else and refused** to

offer me any of the other 1700 or 1770 apartments that became available. Unable to continue paying for hotels and AirBnB's, I was forced by circumstances to move right back to Far Rockaway. **Christopher Miller illegally steered** me back to Far Rockaway by **refusing to accommodate my disability** and refusing to offer a suitable apartment as needed for my medical needs. He was **on notice of my Medical Accommodation needs since 2018** and was incessantly reminded. **<u>See</u> <u>Attached</u>** *Gmail - Federal Medical Accommodation Request [INITIAL 2018 Request to C. Miller].pdf, Gmail - My Rental Application _ Medical Accommodation Request 1770 [SUBSEQUENT 2020 Request to C. Miller].pdf, and Gmail - 28 U.S. Code Sec. 1746 Unsworn Declaration [1770 2020]*

7. There are and have been **many 1 bedroom and studio apartments that have become available that my voucher covers in 1770 and 1700 Grand Concourse.** However, Goldfarb Properties, Inc. Et al. **refuses to move me in,** despite being fully aware of my concerns and medical needs and **receiving many Medical Accommodation requests asking to be moved into 1700 or 1770 Grand Concourse in 2018, 2020, and 2021. <u>See</u> <u>Attached</u>** *Re_ Alleged Noise Complaint - Transfer Request to Landlord and Management [2021].pdf, Medical Accommodation Request for 12H 1770 [2021], Gmail - Answers to Hal D. Weiner Questions regarding Medical Accommodation Request (HIPPA Invitation to speak to my Doctors).pdf, Gmail - NYCCHR Complaint - Failure to Accommodate Disability [2021].pdf*



**8.** Due to Goldfarb Properties, Inc. Et al. Warranty of Habitability Breach, my person was attacked on or about February 26, 2021, a stalker, one of many, tried to stab me, I palm striked his throat with my left and disarmed his knife with my right. I was treated at St. John's Episcopal Hospital Emergency room. I suffer from Post Traumatic Stress and Paranoia from the incident and as stated by Jodyann Wynter, LMSW "It is necessary for the patient to reside in close proximity to his family to receive support and assistance with managing his mental health and coordinating his care. The absence of family support will exacerbate the severity of the patient's mental health symptoms." The NYPD also suggested that I move out the borough  **See** **Attached** *Gmail - Emergency Move Request due to WARRANTY OF HABITABILITY Breach.pdf, Laceration.jpg, Reasonable Accommodation Form Mynor Nunez .pdf*

**9.** One of these many stalkers happens to be two of my neighbor's at apartment #4E right above me. I told the Landlord and the local police about the stalker that was on my fire escape at night in front of my window. Despite Goldfarb Properties, Inc. Et al. having cameras perched right over my fire escape that caught the perp in action and having the legal duty to preserve said evidence. Instead of helping me by preserving and revealing said footage to the NYPD, they chose to **retaliate** by calling the NYPD on me and making a false complaint of my person making "Terroristic Threats" against them. Goldfarb Properties, Inc. Et al. had the NYPD follow me all around NYC and even had a bunch of NYPD knock on my door bearing guns. On information and belief, they told the NYPD that I was "paranoid", "mentally unstable", and making "Terroristic Threats". I've been traumatized by these experiences; revisiting these experiences through this declaration is very nerve wrecking, uncomfortable, and it induced panic attacks on my person of which I medicated myself with my medical marijuana prescription. I've been procrastinating this declaration thus missing the timeframe I gave Joanna Segal. I will get an Order of Protection against my neighbors soon. **See** **Attached** *Gmail - RETALIATION COMPLAINT TO HAL WEINER, Perched Camera1.jpg, Perched Camera2.jpg*

**10.** Despite almost losing a tendon on my finger, dealing with stalking by neighbors, needing a Medical Accommodation move, and sharing said crimes since November 3, 2020 with Lindsay Heck. Goldfarb

Properties, Inc. Et al. believe in the aforementioned denial letter that "There has been no evidence offered about the relationship between the requested [Emergency Medical] accommodation and your stated disability." **See Attached** *Gmail - 20-50 Security Breach.pdf, LANDLORD Denial Letter.pdf*

**11. Racial Discrimination:** Goldfarb Properties, Inc. Et al. refused to consider and denied my need for my Personal Door Camera as prescribed by *David Kraus MS, LMHC.pdf*. However, as to racially discriminate against me, Goldfarb Properties, Inc. Et al. allowed, and has allowed my White Neighbors to have and keep their camera for many, many, years, and as soon as I put up my camera Goldfarb Properties, Inc. Et al told me to take it down or Goldfarb Properties, Inc. Et al. will rob me of my camera when I am not looking at it, Goldfarb Properties, Inc. Et al. said they will have their Maintenance department "remove" and confiscate it (theft). Having chosen not to consider or approve my camera, Goldfarb Properties, Inc. Et al. holds on to said *"fact"* as a lynchpin for Breach of Lease Eviction proceedings against my person. **See Attached** *Gmail - Door Camera.pdf, Gmail - Camera [White Man's Camera].pdf*

"...THEM NO WAN **FREE**. THEM WAN **JAIL** ME O..."

THEY SAID *"I'M NOT FAIR!"* BECAUSE I'M F*CKN **BLACK**

I SAID I'M F*CKN **BLACK**

OMO I'M FU*CKN **BLACK**"

—Victor AD ft. Mr. Eazi *'Black'*

**MAT-97655-B0V3L6: Complaint against Bettina Equities LLC, and its employee Sophia Biraglia**

**12.** Sophia Biraglia **refuses to take my Section 8 Voucher** from February 2020 all the way until the present day. She Sent me a denial letter based on fraudulent information, saying my credit report reflected a $300 student loan obligation that wasn't on my credit report at all. Sophia Biraglia simply made it up

and used that "fact" to deny my rental application. When I confronted her about it I was assaulted. **See**

**Attached** *1497_001 Letter of Denial of Rental Application.pdf*

**1 3. Sophia Biraglia denied a Medical Accommodation request** I made and I was constantly lied to

about apartments and they made it very hard to see units. Sophia Biraglia said that one of the apartments I

saw was a commercial property even though it was not.

**14.** I gave up due to being homeless during COVID Shutdown and went back to Goldfarb Properties 6/21.

**15.** On January 8 2021 I asked Bettina Equities to finish the application we started and was interrupted by

the Pandemic and the Shut down. Lisa Agreed and I saw an Apartment that Lisa Agreed I qualified for.

However, again Sophia Biraglia refused to rent me the unit even though Lisa promised I'd get it. I think

they were playing *'Good Cop-Bad Cop'*, all while knowing all along that they would not rent me the unit.

**16.** Because of Sophia Biranlia's refusal to accept my voucher and rent me the apartment I was forced to

live in AirBnB's and Hotels from late February to Early June.

**17.** Because of Sophia Biranlia's refusal to accept my voucher and rent me the apartment instead of using

my Section 8 Voucher to live I was forced to charge almost $6,000 to my credit cards which ruined my

credit score when I asked the banks to close the credit account and cancel the interest so I can pay it down

causing my Credit Score to drop from 713 down to 547; Goldfarb Properties, Inc. Et al., knowing this is

requesting in their *Medical Accommodation Denial Letter* that "[I] apply to any apartment in our portfolio

when your current lease expires." So that they can deny my rental application based on a low credit score.

**18.** I applied to Whole Foods Market part time and was also **discriminated against**; eventually fired.

**SEE** AND **HEAR** ALL PERTINENT ATTACHED AND MENTIONED  DOCUMENTS HEREIN:
https://drive.google.com/drive/folders/1tTtHwM2pod1yN3G4qh61C5Rd30rWCE8-?usp=sharing
Shortened Link: bit.ly/JOHANA-LEB


## 28 U.S. Code § 1746 - Unsworn declarations under penalty of perjury

I, Mynor Federico Nunez Baltazar, declare under penalty of perjury that the foregoing is true and correct.

Executed on 8/13/2021.                                        Signature: